THE CHASE NATIONAL BANK of the City of New York, Respondent, *v.* B. C. FAUROT, Appellant.

1. NEGOTIABLE INSTRUMENT — CORPORATE SEAL. The commercial paper of a corporation negotiable in form does not lose the quality of negotiability by having attached thereto the corporate seal.

2. PROMISSORY NOTE — LEGAL INCEPTION. The defense of want of legal inception in a negotiable promissory note, interposed by the payee-indorser, *held*, not to have been made out, as against a *bona fide* holder for value, where it appeared that the indorser, having possession of the note for use in a transaction in which he and the maker were interested, had intrusted it to his agent for delivery to a third party on the performance of a certain act by the latter in furtherance of the transaction in hand; that the indorser's agent had delivered the note to the third party without the act having been performed by him, but on his promise to return the note in case the act was not performed, and that the third party failed to do as he had promised, but sold the note.

*Chase N. Bank* v. *Faurot*, 72 Hun, 373, affirmed.

(Argued April 29, 1896; decided May 26, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 24, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Laurence E. Sexton* and *Wetmore & Jenner* for appellant. Defendant is not liable as an indorser. (1 Daniel on Neg. Inst. [4th ed.] §§ 669, 678 ; Parsons on Notes [2d ed.], 23, 36 ; *Lee* v. *Selleck*, 33 N. Y. 615 ; *Slocum* v. *Pomeroy*, 6 Cranch, 221 ; *Artisans' Bank* v. *Park Bank*, 41 Barb. 599 ; *Mott* v. *Wright*, 4 Biss. 53 ; *Bank, etc.*, v. *Brady*, 3 McLean, 268 ; *Dundas* v. *Bowles*, 3 McLean, 397 ; *Root* v. *Wallace*, 4 McLean, 8 ; 11 Whart. 213, 341 ; Story on Notes, 155 ; *Murren* v. *Lake*, 4 How. [U. S.] 262 ; *Brabston* v. *Silson*, 9 How. [U. S.] 263 ; *H. Nat. Bank* v. *Lacombe*, 84 N. Y. 379.) Defendant is not liable as a guarantor.

(Story on Prcm. Notes, § 473; *Jacques* v. *McKnight*, 2 Dutch. 92; *Tryon* v. *DeHay*, 7 Rich. [S. C.] 12; Randolph on Com. Paper, § 866.)  Defendant is not liable as assignor. (*Eastman* v. *Shaw*, 65 N. Y. 529.)

*Philip G. Bartlett* and *Simpson, Thacher & Barnum* for respondent.  Defendant indorsed a negotiable promissory note, and incurred all the liabilities of such an indorser. (*Dalrymple* v. *Hillenbrand*, 62 N. Y. 5; Daniel on Neg. Inst. 669, § 32; *Savage* v. *O'Neil*, 44 N. Y. 298; *Weeks* v. *Esler*, 68 Hun, 518; 143 N. Y. 374; *Peasley* v. *Boatwright*, 2 Leigh, 196; Tiedeman on Com. Paper, §§ 32, 117; *Banks* v. *R. R. Co.*, 5 S. C. 157; *In re Gen. Estates Co.*, L. R. [3 Ch. App.] 758; *Rand* v. *Dovey*, 83 Penn. St. 280; *Bank of Rome* v. *Vil. of Rome*, 19 N. Y. 20; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 497; *Dinsmore* v. *Duncan*, 57 N. Y. 573.) Were the note non-negotiable defendant would still be liable as guarantor, or as maker of a new note. (*McMullen* v. *Rafferty*, 89 N. Y. 456; *Cromwell* v. *Hewitt*, 40 N. Y. 491; *Roe* v. *Hallett*, 34 Hun, 128; *Seymour* v. *Van Slyck*, 8 Wend. 403; Tiedeman on Com. Paper, § 257; Daniel on Neg. Inst. §§ 693, 694; Story on Prom. Notes, § 128; *Combes* v. *Chandler*, 33 Ohio St. 178; *Moore* v. *Metr. N. Bank*, 55 N. Y. 41; *Lee* v. *Selleck*, 33 N. Y. 615; *M., etc., Co.* v. *Bradley*, 105 U. S. 175.)  The defense of usury was not maintained. (*Joy* v. *Diefendorf*, 130 N. Y. 6; *Cobb* v. *Titus*, 10 N. Y. 198; *Stewart* v. *Bramhall*, 74 N. Y. 87; *Rosa* v. *Butterfield*, 33 N. Y. 665; *U. Nat. Bank* v. *Wheeler*, 60 N. Y. 612; U. S. R. S. §§ 5197, 5198; Laws of 1882, chap. 409, § 68; *Stillman* v. *Northrup*, 109 N. Y. 473; *Burke* v. *Monroe Co.*, 77 Ill. 610; Randolph on Com. Paper, § 528; *Marvine* v. *Hymers*, 12 N. Y. 223; *Mosher* v. *Randall*, 52 N. Y. 649.)

BARTLETT, J.  The plaintiff seeks to recover of defendant as indorser of a promissory note for $16,787.02, signed "New York Construction Company, by T. P. Graf, Secretary."

Impressed upon the face of the note were the words " New York Construction Company, Seal." The note did not recite a seal and no effort was made at the trial to prove the seal, or that it was affixed by authority of the " New York Construction Company," save reading the note in evidence. The note was executed and payable in the state of Ohio and the contract of indorsement was made in the state of New York. The facts upon this appeal are undisputed, and the plaintiff's counsel insists that the seal on the note in suit was not proved within the rule laid down by this court in *Weeks* v. *Esler* (143 N. Y. 374); that the note is negotiable, and having been purchased in good faith and before maturity, as found by the jury, the recovery below must be sustained.

The defendant's counsel, while admitting that the rule in *Weeks* v. *Esler* is opposed to certain of his contentions on this appeal, urges with much earnestness and ability that this court should re-consider the doctrines of that case; he also argues that even assuming the note to be negotiable in form, it never had a legal inception, and defendant is not liable as indorser.

We held in *Weeks* v. *Esler* that the presumption attaching ordinarily to seals of corporations when affixed to deeds or other instruments did not exist as to the promissory notes of a corporation, and that in the absence of any recital that the seal of the corporation was affixed and of any evidence to show the fact of sealing, or that the corporate seal was impressed, or that it was the corporate seal, the notes could not be regarded as sealed instruments.

We think this rule a reasonable one in view of the vast business transactions of corporations, and see no occasion to re-consider it.

In the case at bar we shall assume for the purposes of this appeal that the note in suit was a sealed instrument, and will place our decision on broader grounds than those laid down in *Weeks* v. *Esler*.

In view of the law as settled by this court and the courts of other jurisdictions as to what instruments are negotiable, we hold that the commercial paper of a corporation negotiable in

form does not lose the quality of negotiability by having attached thereto the corporate seal.

The following are a few of the cases showing the evolution of the modern doctrine that a seal does not deprive corporate obligations of negotiability :

*Bank of Rome* v. *Village of Rome* (19 N. Y. 20). The village had issued bonds under its corporate seal in aid of a railroad company, and the latter sold certain of them to a *bona fide* holder, and the question was whether the purchaser was subject to a defense available against the railroad company.

COMSTOCK, J., said : " The bonds were payable to bearer, and although under the corporate seal of the village, they were negotiable instruments in such a sense as would exempt them, in the hands of a *bona fide* holder, from a defense which might be available against the railroad company." (Citing *State of Illinois* v. *Delafield*, 8 Paige, 527; *S. C.* on appeal, 2 Hill, 159, 177; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 625, 627; *Morris Canal & B. Co.* v. *Fisher*, 3 Am. L. Reg. 423.)

*Brainerd* v. *New York & Harlem Railroad Company* (25 N. Y. 496). It was held that the bond of a railroad corporation, payable to an individual or his assigns, is in the nature of commercial paper, negotiable by delivery under an assignment in blank, and not a specialty subject to equities between the corporation and the person named in the bond as the primary payee.

DENIO, Ch. J., said : " The questions of law which the appeal presents are, whether these instruments are commercial paper, so as to be negotiable, and whether they were legally negotiated by delivery under the blank assignment. These might have been very grave questions in this state a few years ago. But they have been settled against the defendant in this state by a series of decisions which it is impossible at this day to depart from.    *    *    *    The point of objection, when it is sought to bring such securities within the law of commercial paper is that, being under seal, they are deeds, and commercial instruments are simple contracts. But when such obliga-

tions are issued to secure the payment of money upon time, and contain on their face an expression showing that they are expected to pass from one person to another, and thus to perform the office of bills and notes or of money, as the words 'bearer,' or 'assigns,' or 'the holder,' or the like, the courts of this country, with a single exception, and those of this state, without any exception, have concurred in attaching to them the attributes of commercial paper." (See cases cited in this opinion.)

This case also laid down the rule that no distinction could be made between private corporations and those which are created for governmental or municipal purposes.

*Dinsmore* v. *Duncan* (57 N. Y. 573). It was held that the negotiability of a United States treasury note is not restrained or affected by the fact that it is under the treasury seal.

DWIGHT, C., said: " There are several objections urged to the negotiability of this instrument. One is, that it is under the seal of the United States treasury. There are, no doubt, decisions that an instrument under seal is not negotiable. These cases refer to private obligations between individuals. (*Clark* v. *Farmers' Woolen Manufacturing Co.*, 15 Wend. 256; *Steele* v. *Oswego Cotton Manufacturing Company*, Id. 265.) They are not to be extended to the case of public securities like those issued by the government, and intended to seek for a market throughout the civilized world. The seal was not placed there to restrain their negotiability, but rather to stamp them as genuine, wherever they might be in circulation."

*Evertson* v. *National Bank of Newport* (66 N. Y. 14) holds interest coupons of railroad bonds payable to bearer at a specified time and place are negotiable promises for the payment of money. (See cases there cited.).

*Marine, etc., Mfg. Co.* v. *Bradley* (105 U. S. 175) was the case of an instrument issued by a South Carolina corporation under seal agreeing to pay a certain sum of money, and by an indorsement under seal the company agreed in consideration of forbearance to pay a higher rate of interest on the money to bearer.

Mr. Justice MATTHEWS, passing upon the validity of the indorsement, said : " It is a negotiable note within the meaning of the law merchant, according to the law of the place of the contract, notwithstanding it is an instrument under seal." (p. 180.)

In *Mercer County* v. *Hacket* (1 Wall. 83) the United States Supreme Court held county bonds under seal to be negotiable instruments. Mr. Justice GRIER said, in speaking of the bonds issued under seal: " But there is nothing immoral or contrary to good policy in making them negotiable if the necessities of commerce require that they should be so. A mere technical dogma of the courts or the common law cannot prohibit the commercial world from inventing or issuing any species of security not known in the last century."

The following authorities further illustrate the point under discussion : *Mason* v. *Frick* (105 Pa. St. 162 and cases cited); *Barrett* v. *Schuyler Co.* (44 Mo. 197); *Morris Canal, etc., Co.* v. *Fisher* (9 N. J. Eq. 699); *Haven* v. *Grand Junc. R. R. & D. Co.* (109 Mass. 88); *Murray* v. *Lardner* (2 Wall. 110); *National Exchange Bank* v. *Hartford, P. & F. R. R. Co.* (8 R. I. 375); Daniel on Neg. Inst. §§ 1500 and 1501 and cases cited; Morawetz on Corp. § 341; Tiedeman on Com. Pap. § 117.

In *Blewitt* v. *Boorum* (142 N. Y. 357) Judge PECKHAM, in a learned and interesting opinion, reviews the history of seals upon instruments and points out their immateriality on contracts which do not require them in order to be valid.

The note in suit being negotiable under the law of this state, and the contract of indorsement having been made here, it is unnecessary to consider many of the points argued by appellant under the assumption that the defendant had indorsed a non-negotiable instrument.

It remains only to examine the contention of defendant's counsel, that the note, if negotiable, never had a legal inception and that defendant is not liable as indorser.

The note sued on was executed under the following circumstances :

The defendant was interested in building a railroad in Ohio, known as the Columbus, Lima and Milwaukee railroad, which was in course of construction.

Capital was needed, and defendant came to New York to arrange for raising it at the suggestion of a firm of contractors who were engaged in building a portion of the road. One Kaufman Simon was on the indemnity bond of the contractors to the construction company in the sum of $50,000.

Simon had advanced money to the contractors in the sum of $16,787.02, being the amount of the note in suit.

The contractors were in some difficulty and suit had been instituted against Simon on the bond.

At this juncture Simon professed to have made arrangements with responsible third parties for capital to complete the road.

Simon insisted that he would not close with the parties who were to raise this money unless he was paid his advances to the contractors and the indemnity bond surrendered to him.

The defendant sent to Ohio for his attorney, Mr. Cable, to aid him in closing the transaction.

After Cable arrived in New York the defendant placed in his hands the note in suit, duly indorsed by himself, and the indemnity bond upon which Simon was liable as surety.

A form of contract had been agreed upon under which the new arrangement was to be carried out, and defendant testified that he told Simon that when the contract was signed by him and his parties he had instructed Cable to give him the note and indemnity bond.

Cable swore that Simon said the contract was all right, but he would not ask his parties to sign unless he knew there would be no question about past transactions, and he asked that the note and bond be delivered to him. Cable at first demurred to such a course as contrary to his instructions, but finally yielded, with the understanding that the note and bond were to be returned if contract was not signed. Simon departed with the note and bond in his possession under promise to get the contract executed and deliver it to Cable at a place named

at a later hour the same day, but failed to do so and departed from the state.

This was in July, 1890, and on the 29th day of the following September Simon handed the note to the president of the Southern National Bank, with the request that he give it to a broker for sale. The note was sent to brokers to sell for $16,000, which was done, and the purchaser sold to the plaintiff for $16,500.

Under these circumstances it is clear the note had a legal inception. The situation is the same as if the defendant himself had handed the note to Simon. By the act of defendant's agent the note was put in circulation, and the defendant cannot avail himself of his agent's mistake and Simon's bad faith as a defense against the *bona fide* holder of the note. The note having a legal inception, the defense of usury fails even if it is assumed, contrary to the law, that it could have been pleaded against the corporation plaintiff.

We have examined the exceptions and find no reversible error.

The judgment appealed from should be affirmed, with costs. All concur.

·Judgment affirmed.

```
149   539
152   104

149   539
154   113

149   539
170   5553

149      539
j172    4  77

149      539
78 AD   14
```